JAMES TILLINGHAST and ALBERT DAILEY, Trustees, v. JAMES H. COGGESHALL and HENRY LIPPITT, Trustees, and another.

Where the undivided half of an estate was, at the request of a married woman, purchased by her trustees under a settlement of her property made after marriage, which settlement included the other undivided half of the estate, and was conveyed to such trustees for the sole and separate use of the married woman for life, and in default of her appointment by will was to be conveyed by the trustees "to her heirs at law, or other persons, in fee simple, or in such other estate therein,. and in such proportions as they would respectively be entitled to by the statutes then in force in said State of Rhode Island," *it was held*, the wife dying and having failed to appoint, that she had reserved to herself, in the undivided half thus purchased, an equitable estate in fee simple under the rule in Shelley's case; and that her husband was entitled to curtesy therein, such construction being found to be most conformable to her intent.

The reservation by a wife, in her marriage settlement, of the rents and profits of her estate to her sole and separate use for life, does not amount to the expression of an intent to exclude her husband from curtesy in such estate at her death, the exclusion of the husband being partial only.

An equitable estate in fee simple, inherited by a daughter from her mother, will not, by the statute of descents of Rhode Island, upon her death, descend to her father, but to her sister, as her next of kin of the blood of the mother from whom the estate descended to her.

Tillinghast and Dailey, trustees, *v.* Coggeshall and Lippitt, trustees, and another.

The court, upon the application of trustees, advised the purchase by them, with the trust moneys, of a mortgage upon a portion of the trust property, but which embraced other property not included in the trust, and which was then, and might continue to be, devoted to precisely the same persons and uses as the mortgaged portion of the trust estates, but declined to consider questions of exoneration of one of the estates from, or contribution of the other estate to, the payment of the mortgage which might never arise, until the same had arisen, and the parties interested therein were before the court.

THIS was a bill in equity, filed by the complainants, as trustees under an appointment by will of the late Frances B. Coggeshall, formerly Frances B. Low, against her husband and another, as trustees under a settlement of her property made by her said husband and herself after marriage, and against her sole surviving child, Jessie L. Coggeshall, a minor, praying for an ascertainment of the trust property, and the conveyance of a portion of the same alleged to be improperly retained by the last named trustees, and for instructions.

On the 24th day of October, 1855, the said Frances B. Coggeshall, being seized and possessed, in her own right, of a certain lot of land, with the buildings and improvements thereon, situated in Providence on the westerly side of Hope street, subject to a mortgage of $4000, for so much of the purchase money thereof unpaid, and also of an undivided half of an estate in said Providence, situated on the northerly side of Broad street, united with her husband in voluntary conveyances of said estates to James Tillinghast and Ezra W. Howard, respectively, who, on the same day, respectively conveyed said estates to the said James H. Coggeshall, husband of said. Frances B., and to Henry Lippitt, and the survivor of them, their heirs and assigns, in trust, "for the sole and separate use of the said Frances B. Coggeshall, for and during her natural life ; and to permit the said Frances B. and her family to occupy" the said Hope street estate, free of rent, and to collect the rents of the Broad street estate and to pay over the same to said Frances B., upon her receipt or written order ; with full power in the trustees to lease, mortgage, sell, convey or exchange said estates, or any part thereof, upon the request of said Frances B., and to pay over the proceeds to her, or to re-invest the same as she in writing might direct. The deeds of settlement further provided, that if the said Frances should die

during the life of the said James H., the trustees were, upon her death, to convey said estates, as she might, by last will and testament or other instrument in the nature thereof, executed in the presence of three witnesses, direct; " and in default of such will or other instrument, forthwith convey said estates to her heirs at law, or other persons in fee simple, or in such other estate therein, and in such proportions as they would respectively be entitled to by the statutes then in force in said State of Rhode Island;" and in case of the decease of the said James H. Coggeshall, during the life of the said Frances B., then the trusts named in the deeds of settlement were to cease and determine, and the trust estates were to be conveyed by the trustees to said Frances B. Coggeshall, to hold to her, her heirs and assigns, in fee simple. The deeds of settlement further provided for the appointment of new trustees by the decree of the Municipal Court of the City of Providence, upon the death or resignation of the old ones.

On the 2d day of February, 1856, Frances B. Coggeshall executed her last will and testament, in which, after reciting, amongst other things, the above deeds of settlement and the trusts thereof, and that she "is now possessed, and may hereafter become possessed of personal property in her own right, and which she may dispose of by law, by will, notwithstanding her marriage," the will proceeds as follows :—

" Now, therefore, for the purpose of disposing, after my decease, of the property embraced in the aforesaid instruments, and of other personal property which I may die possessed of in my own right, I hereby direct, and my will is, that said property and estate shall, as soon as can be conveniently done after my decease, be transferred and conveyed by the trustees aforesaid, or by the person or persons in whom the legal title thereto may be vested at the time of my decease, to Henry Lippitt and Francis E. Hoppin, to be held by them and the survivor of them, his heirs and assigns, in special trust.

" That they shall take said property and estate into their hands and possession, and shall first pay to my said husband, James H. Coggeshall, the sum of four thousand dollars.

" That they shall collect and receive, from time to time, as they

may become due, the rents, issues and profits, interest, dividends, income, and annual produce of my said property and estate, and after paying the taxes, expenses for repairs, insurance, and all other expenses incident to the management of said property and estate, and the execution of the trusts hereby declared, shall pay over the rest, residue and remainder of said rents, issues and profits, interest, dividends, income and annual produce, to my said husband, James H. Coggeshall, at such times and in such amounts as he may, from time to time, request, for and during the term of his natural life, or until the termination of the trusts hereby declared during his life, as is hereinafter provided.

"That, upon the decease of my said husband, during the continuance of this trust, my said trustees shall forthwith transfer and convey all my estate and property remaining in their hands and possession to my children then living, or to their heirs, executors, administrators and assigns, to their sole use, benefit, and behoof forever, and the trusts heretofore declared shall thereupon cease and determine ; but in case my said children shall die during the lifetime of their father, my said husband, the said James H. Coggeshall, without issue of their bodies, or children of such issue living at the time, then I direct my said trustees to pay out of the property and estate in their hands the following legacies, if the persons named as legatees shall be severally living." [Here follow pecuniary legacies to the amount of $5500, with power to the trustees to sell so much and such parts of the estate as, in their judgment, is most expedient to raise the sums necessary to pay the legacies.]

The will then proceeds to direct the trustees to transfer and convey to her husband, James H. Coggeshall, in fee and discharged from all trusts, " all the rest, residue and remainder of my said property and estate," and gives general power to the trustees and their successors in the trust to sell the trust property, as they may, from time to time, deem expedient, and to invest the proceeds of such portions as they might sell, in real estate, stock, or other safe and productive property, at their discretion, and without accountability for losses happening in the execution of the trusts, unless caused by their gross negligence or default. The will also provided for the appointment of new

trustees by the Municipal Court of the City of Providence, or other court exercising probate jurisdiction in said city, in case of the death, resignation, or incapacity to act, of those or either of those appointed by the will.

On the fifth day of August, 1856, the defendants, trustees under the settlement of the said Frances B. Coggeshall, at her request, purchased for her the other undivided half of the Broad street estate, and to raise a portion of the purchase money, mortgaged the whole estate to the Providence Institution for Savings for the sum of $9000, and applied that sum to the payment of the purchase money of the undivided half so purchased, and took a conveyance of the same to themselves, as trustees for said Frances B., upon the same trusts set forth in the deed of the other undivided half of said estate; and said mortgage, for the principal sum thereof, remains wholly unsatisfied and outstanding. On the 20th day of February, 1860, Frances B. Coggeshall died, leaving her will aforesaid, which has since been admitted to probate, and after, as the bill states, an ineffectual attempt, which failed only through bodily debility, to make another will which should convey the half of the Broad street estate, purchased at her request by the trustees of her settlement, to the trustees under her will, upon the same trusts as the other half of said estate ; and her husband, the said James H. Coggeshall, and two minor children by her said husband, to wit, the said Jessie L. Coggeshall and Sarah Frances Coggeshall, survived her, one of whom, the said Sarah Frances, has since died intestate and without issue. On the 29th day of January, 1861, the said James H. Coggeshall and Henry Lippitt, trustees under the settlement of said Frances B. Coggeshall, by their deed of that date, conveyed the Hope street estate, and the original undivided half of the Broad street estate embraced in the will of said Frances B.; in accordance with the directions thereof, to said Lippitt and Francis E. Hoppin, in fee, to hold the same as trustees under said will in pursuance of the appointment thereof ; but Hoppin and Lippitt shortly after resigning as such trustees, the complainants, James Tillinghast and Albert Dailey, were, by a decree of the Municipal Court of the City of Providence, appointed to succeed them as trustees under the will of said Frances B., and

thereupon the said Hoppin and Lippitt, by their deed dated February 15th, 1861, conveyed and assured to them in fee simple, as such trustees, the said Hope street estate, and said original undivided half of the Broad street estate, retaining the other undivided half of the Broad street estate, purchased as aforesaid.

The bill stated, that at the time of said conveyance to the complainants as trustees under the will of the said Frances B. Coggeshall, the Hope street estate was subject to a mortgage for $4000, made by said Frances B. and James H. Coggeshall, her husband, to Rufus Waterman, to secure so much of the original purchase money of that estate, then unpaid,—and required considerable annual outlay to keep down the interest upon said mortgage and to pay taxes and insurance thereon, and for repairs; and the said trustees, in the exercise of the discretion vested in them by the will of said Frances B. and at the request of the said James H. Coggeshall, he joining them in the deed, on or about the nineteenth day of February, 1861, sold and conveyed the Hope street estate to Helen D., the wife of Caleb Seagrave, of said Providence, taking in payment therefor, forty-three shares of the capital stock of the American Screw Company of said Providence; and to enable them to make a clear and unincumbered title to the purchaser of said estate, raised a sum sufficient to pay off and procure a discharge of said Waterman mortgage, by a pledge of a portion of said screw stock, which amount, so raised by said pledge, is still due and owing from the trust estate in the hands of the complainants; that said stock so taken in payment for the Hope street estate appreciating, the complainants deeming it for the best interests of said trust estate so to do, and at the request and with the concurrence of the said James H. Coggeshall, from time to time, sold said stock, and therefrom have realized sufficient sums to pay off said amount raised as aforesaid by the pledge of said stock, and also to take up and pay said mortgage on the Broad street estate to the Providence Institution for Savings; and the bill submits, that such application of said proceeds of said stock may be sanctioned by the court, as, in the opinion of the complainants, the best application and investment of said proceeds that can be made for said trust estate. The bill further claims, that the complainants

are entitled as trustees under the will of said Frances B. Coggeshall, to a conveyance from the trustees under her settlement of the one undivided half of the Broad street estate purchased by them for her in 1856, and that the trustees under the settlement should be compelled to convey the same to them upon the trusts of said will, notwithstanding the pretences of the defendant, James H. Coggeshall, that he is entitled for life to the same as tenant by the curtesy, and to the undivided half of the same, as tenant in fee, by inheritance from his deceased daughter, the said Sarah Frances Coggeshall, and prays, that such conveyance may be decreed, and that the said sales of the Hope street estate and of the stock of the American Screw Company, made as aforesaid by the complainants as trustees under the will of said Frances B. Coggeshall, may be approved and confirmed; that in case the complainants are not entitled to a conveyance of the undivided half of the Broad street estate retained by the trustees under the settlement of the said Frances B. Coggeshall, the mortgage given as aforesaid, by the said James H. Coggeshall and Henry Lippitt, upon the whole of said Broad street estate, to the Providence Institution for Savings, may be decreed to rest and be a lien upon the undivided half of the Broad street estate by them retained as trustees under the settlement of the said Frances B. Coggeshall, in exoneration therefrom of the half of said estate vested in the complainants as trustees under the appointment of her will; and that the complainants may be authorized and directed to apply so much of the moneys in their hands, as proceeds of the said sales of the said shares in the American Screw Company, as may be necessary for the payment of the amount raised and still due as aforesaid upon a pledge by the complainants of a portion of said shares, and further to apply such proceeds to the payment of, or purchase of, and investment in, said Savings Bank mortgage, and upon such purchase and investment that the complainants may be authorized to hold and keep said mortgage outstanding and in force, for its full amount against the half of the Broad street estate retained by the trustees under the settlement of Frances B. Coggeshall in exoneration of the half of said estate held by the complainants under her will, if they are not entitled to a conveyance of said half so retained; and that the

complainants may be instructed as to the investment of the other trust funds in their hands, and for general instruction and relief.

The answer filed by James H. Coggeshall and Henry Lippitt, as trustees under the settlement of Frances B. Coggeshall, admitted the facts stated in the bill, and submitted the rights and duties of the respondents, as such trustees, to the decision and direction of the court.

The separate answer of James H. Coggeshall, with a like admission of the facts stated in the bill, submitted to the court that he was entitled, as heir to his daughter, Sarah Frances Coggeshall, deceased, to the one undivided half of the purchased half of the Broad street estate, in fee, and to a life estate in said purchased half, as tenant by curtesy, and that his interest therein should be conveyed and assured to him.

The answer of Jessie L. Coggeshall, sole surviving child of said James H. and Frances B. Coggeshall, by her guardian *ad litem*, Abraham Payne, admitted the facts stated in the bill, and submitted, that the said Jessie L. was sole heir of her deceased sister, and that the said James H. was not entitled to curtesy in the undivided half of the Broad street estate purchased by the trustees under the settlement of his wife.

The case was heard upon bill and answer.

*James Tillinghast, for the complainants.*

*Abraham Payne, for Jessie L. Coggeshall.*

AMES, C. J.   We do not see upon what ground the trustees under the will of Mrs. Coggeshall can claim from the trustees under her settlement the conveyance of the undivided half of the Broad street estate, purchased by her after her will was executed. In application to real estate, her will, as that of a married woman, can only have effect by way of appointment under the deeds of trust then existing, which conferred upon her the power to appoint the persons who should succeed her in the estates embraced by them.   By its recitals her will professes to be in execution of that power, and to dispose only of the estates mentioned in the deeds, pointedly distinguishing, in this respect, between the *real* property, which it could affect only by way of appointment, and such *personal* estate as she had, or might acquire, which, under our statute of wills, her will might, and

did, dispose of, in its character merely, of a *will.* That the testatrix supposed, for a long time, that her will operated upon her new purchase,—that at last, when she ascertained that it did not, she attempted to execute another will,.by way of appointment under the trusts of the deed which conveyed her new acquisition, and which she failed to accomplish from bodily debility, cannot affect this question; since the appointment was not made in the prescribed mode, and the newly acquired half of the Broad street estate was consequently left to take the course marked out for it in default of such appointment, by the deeds of trust by which the estate was acquired.

These deeds, by reference to the trust deed of the other half of the Broad street estate, devote this half to precisely the same trusts. By virtue of them, Mrs. Coggeshall retained an estate for life for her sole and separate use, the rents and profits to be paid by the trustees upon her receipt or written order, with power to direct, in writing, the leasing, mortgaging, selling or exchanging the same; and in case of sale, to receive and apply or direct the investment of the proceeds thereof, and by will to appoint the estate to whom she would. Upon the death of her husband during her life, the estate was to be forthwith conveyed to her in fee, free from all trust; and in case of her death during the life of her husband, and in default of an appointment by her will, the trustees were "forthwith to convey said estate to her heirs at law, or other persons, in such proportions as they would severally be entitled to by the statutes then in force in Rhode Island." In other words, the trust, in form, constituted her an equitable tenant for life, with all the powers and privileges of an equitable tenant in fee, as to its disposal by, or descent from, her. Upon her death without a will, it was to be conveyed by the trustees to her heirs at law, or persons then entitled by law to take it, and in such proportions as the law directed in case of an intestate estate.

The main question in the case is,, whether, under these dispositions, Mrs. Coggeshall reserved to herself, in the newly acquired half of the Broad street estate, an equitable estate in fee by virtue of the rule in Shelley's case, or an equitable estate for life only,— her heirs at law to take as purchasers,—for, as we determine this,

we determine whether her husband is entitled to curtesy in that portion of her property. It might be a question under the distinction laid down by Lord Talbot in *Lord Glenorchy* v. *Bosville*, Cas. Tem. Talb. 8, and the English cases following, which have illustrated the distinction, whether the trust for the heirs, here raised, is, in the sense of a court of equity, an *executory* or an *executed* trust. No doubt, " another conveyance was to be made," and in that respect, " somewhat was to be done ;" but that is the case with every trust, since none can be executed without a conveyance. The true test seems to be,—has the creator of the trust been his own conveyancer? has he left it to the court to make out, from *general expressions*, what his intention is, or has he so defined his intention, that you have nothing to do but to take the limitations he has given to you, and to convert them into legal estates? See *Lord Glenorchy* v. *Bosville*, 1 White & Tudor's Lead. Cas. in Equity, 61, 62, notes (3d Am. ed.), and cases cited. It would be difficult to find in the trust here created for the heirs of Mrs. Coggeshall, any discretion left in the trustees or the court as to what or how, in the event contemplated, the heirs were to take !

The distinction, however, is important only so far as it affects the right of the court to apply, or to refuse to apply, the rule in Shelley's case to the limitations of a trust. If an executed trust, the limitations must be construed by that rule of law, precisely as if they were legal limitations ; if executory, the court will look at the general purpose and particular intent of the creator of the trust, as expressed in the instrument, and construe the limitations as these may require. Ibid.

In the case before us, the trust is raised neither by a will nor by an agreement before marriage for a marriage settlement, but by a deed of the wife's estate executed by the husband and wife after marriage, for the purpose of directing how, in the contemplated events, the estate should go. In default of an appointment by the will of Mrs. Coggeshall, no other deed or instrument was intended to be executed by her, or by her and husband, by way of completing this settlement. The direction to the trustees to convey the remainder to the heirs at law of Mrs. Coggeshall is certain and explicit; and both upon principle and the decided

weight of authority, the trust thus created for her heirs was not executory, but executed, in the only sense in which a trust can be. The usual definition of an executory trust, that it is one where something additional is to be done by the trustee, is plainly an imperfect one, as pointed out by Lord St. Leonards, in the case of *Egerton* v. *Lord Brownlow*, in 4 House of Lords Cas. 1; for, as he observes, in every trust, even in those called executed, there is still something additional to be done by the trustees, before the *cestuis que trust* can obtain the full benefit of the trusts created for their advantage. A trust " for B in fee," and a trust " to convey to B in fee," cannot be substantially distinguished; since the latter merely expresses what the former implies, and both are quite distinct from a direction to trustees, to make such a settlement of an estate upon B as would best ensure the continuance of the estate in him and his children. In the former case, the limitations are perfect, and nothing is left for the trustee but to execute them as directed; in the latter case, they are yet to be made, and the trustee is to make them, so as best to fulfil the intent and carry out the purpose of the settlor. In the former case, the trusts are said to be executed, in the sense of being definite or completely marked out; in the latter case, executory, since no mode of settlement is prescribed, but merely the *intent* or *purpose* of the creator of the trust, to be carried out, as best it may, by a settlement to be made by the trustee. See *Holliday* v. *Overton*, 15 Beavan, 480; *Lassence* v. *Tierney*, 1 Mac. & Gor. 551; *Tatham* v. *Vernon*, 4 Law Times Rep. (N. S.) 531, 533; *Neves et al.* v. *Scott et al.* 9 Howard, R. 196, 211; 2 Story's Eq. Jurisp. § 983, and n. 1; 1 Hill on Trustees, 328, side paging; Adams' Equity, 40, 41, side paging.

Construing the trusts under consideration as executed trusts, we do not feel at liberty to depart from the long settled rule, that as a court of equity, we must construe them in the same way as legal estates of the like nature would be construed at law, upon the same language. 2 Story's Eq. Jurisp. § 983, and cases cited. As the estate for life reserved by Mrs. Coggeshall for herself, and the estate given by her to her heirs at law are both equitable estates, there seems to be nothing wanting to warrant the enlargement of her estate, under the rule in Shelley's case, into an equi-

Tillinghast and Dailey, trustees, *v.* Coggeshall and Lippitt, trustees, and another.

table fee. Fearne on Conting. Rem. 52–57 ; *Eaton* v. *Tillinghast, Trustee, and others*, 4 R. I. Rep. 276, 280–2. Her husband would, therefore, be entitled to curtesy in this portion of her estate, unless the fact that the life estate was reserved to her sole and separate use, must be deemed to exclude him. Whatever doubts were once entertained upon this subject, (*Hearle* v. *Greenbank*, 3 Atk. 715,) it seems to be well settled now, that the reservation by the wife of the rents and profits of her estate to her sole and separate use, during her life, does not amount to an expression of an intent, on her part, to exclude her husband from curtesy therein at her death. The exclusion of the husband might, if the intent to exclude him had been expressed, have been total, as in *Davis* v. *Bennet*, 2 P. Wms. 316 ; but, as in this case, the exclusion was partial only,—during her life,—the court can have no authority to restrain him from the enjoyment of his general right, as tenant by the curtesy in the equitable estate in fee of his wife. *Morgan* v. *Morgan*, 5 Madd. R. 248, 250 ; *Pitt* v. *Jackson*, 2 Bro. C. C. 51 ; 4 Kent's Com. 30–32.

Upon the death of Mrs. Coggeshall, the half of the Broad street estate in question passed by descent to her two daughters, as her heirs at law, subject to the curtesy of their father; so that, by the terms of the settlement, they were "forthwith" entitled to a conveyance of the same from the trustees. When one of the daughters, shortly after, died, her interest in the half of the estate descended to her sister, as her next of kin of the blood of her mother, from whom the estate came or descended to her. Rev. Stat. Ch. 159, § 6. The sixth section, as it now stands, or the ancestral clause, as it is called, of our statute of descents, has always been held to override all the previous canons of the statute, and it excludes Mr. Coggeshall from inheriting any portion of this estate from his deceased daughter.

The sale of the Hope street estate, by the complainants, trustees under the will, for forty-three shares in the capital stock of the American Screw Company, was clearly within the power vested in them; and under the circumstances stated in the bill and admitted by the answers, seems to have been a discreet exercise of their power. The pledge of a portion of the shares for the purpose of raising money with which to pay the mortgage on

that estate, and thereby to enable them to give a clear title to it to the purchaser, was, as the means to the sale, fairly within their power ; and the subsequent sale of the shares, or of some of them, after they had appreciated, seems to us unobjectionable in every respect. We advise that so much of the proceeds of sale as is necessary to redeem the shares of stock pledged as aforesaid should be applied to that purpose, as the best and most prudent application that can be made of it in the administration of the trust estate. Had the trustees sold the estate for money, clear of the mortgage, their first duty would have been to have applied the necessary portion of it to the payment of the mortgage ; the balance only representing the amount realized by them from the sale of the estate. The course advised is, under the circumstances, only the performance of the same duty.

We advise, too, the application by the trustees under the will of so much of the proceeds of sale of said shares as may be necessary to the disencumbering of the portion of the Broad street estate held by them, by the purchase from the Providence Institution for Savings of the mortgage imposed by the former trustees with the assent of Mrs. Coggeshall upon the whole of that estate, as the safest and most proper application and investment of such proceeds that can be made. The mortgage rests upon an estate, in the whole of which James H. Coggeshall has an estate for life, and in the undivided half of which his surviving daughter, Jessie L. Coggeshall, has an estate in fee. Should this daughter survive her father, she will, under the appointment of her mother, be entitled to a fee in the other undivided half of said estate, and to these proceeds, however invested, in absolute property. In this contingency, it is obvious, that such an application of the proceeds will disencumber the common estate for the benefit of both, and without prejudice to the rights of either. Should, however, the father survive the daughter, whilst the fee of the purchased half of the Broad street estate will pass to her heirs or devisees, the other half of that estate, together with the proceeds of sale of the shares, now vested in the trustees under the will, will go to the appointees of her mother. Against such an event, it is proper that the trustees under the will should take an assignment of the mortgage, and keep it alive to protect the

trust estate in their hands, in any questions of exoneration and contribution which may then arise with regard to it, between the appointees under the will, and the heirs and devisees of Jessie L. Coggeshall, in whom the purchased half of the Broad street estate is now vested in fee. Both because these questions may never arise, and because other parties, not before the court, will be interested in them, we must decline to answer them now; but shall leave them to be litigated when they arise, and by the parties who may then be interested in them.

As no scheme is presented for the investment of other trust moneys in the hands of the complainants, we must decline to advise with regard to their investment; confidently hoping that the large powers entrusted to the complainants, in this respect, under the will of Mrs. Coggeshall, will be discreetly exercised by them.

We are not aware of any fact material to our decision, and not for the advantage of the infant defendant, which is not proved by the deeds and instruments exhibited with the bill, and see no need of a reference to a master.